35 C.C.P.A.(Patents)

**Application of STRECKERT et al.**
**Patent Appeal No. 5429.**

Court of Customs and Patent Appeals.
May 4, 1948.

Towson Price, of Bloomfield, N. J., for appellants.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all the claims in appellants' application for a patent for an alleged invention relating to a method of preserving meat and the product thereof.

Claims 9, 12, and 20 are sufficiently representative of the appealed claims. They read:

"9. The method of preserving hams comprising smoking at a temperature higher than 158° F., treating the surface of said hams with ultra-violet radiation to kill bacteria while allowing them to cool to below 70° F., dipping said hams while still under said radiation in sterilized melted wax containing about .2% sodium benzoate for about one minute, cooling, redipping for about one-half minute, cooling for at least one hour, and wrapping."

"12. Smoked ham freed from surface bacteria by ultra-violet radiations, dipped in melted wax while still protected by said radiation, and cooled."

"20. The method of preserving fresh hams comprising enclosing in stockinets, thoroughly cooking, moving said cooked hams directly to a room equipped with bactericidal ultra-violet radiation-generators, so that they are protected and maintained sterile under such radiation, while allowing said cooked hams to cool to below 70° F., heating microcrystalline wax to a temperature of at least 212° F., adding about .2% sodium benzoate, dipping said hams, while still protected by said ultra-violet radiation, in said benzoated wax,

and cooling, whereby the microcrystalline wax, reinforced by the stockinet, maintains a durable protective coating over the cooked sterile ham, and makes it possible to keep it even though unrefrigerated, without the development of fissions in the protective coating, in an edible condition free from spoilage, for a long period of time."

The references relied on are:

Hopkins, 1,098,575, June 2, 1914.

Bridgeman et al., 1,943,468, January 16, 1934.

Stone, 2,021,137, November 19, 1935.

Kronquest, 2,117,180, May 10, 1938.

Australian Patent, 105,701, November 1, 1938.

McKee, 2,137,898, November 22, 1938.

James, 2,169,081, August 8, 1939.

Musher, 2,198,209, April 23, 1940.

Kellermann, 2,262,238, November 11, 1941.

Warth et al., 2,306,576, December 29, 1942.

McHugh, Article "Sterilizing with Light," June, 1938, Scientific American.

The process disclosed by appellants' application comprises smoking or cooking meat in a stockinet at a temperature above 158° F., thus precooking the meat, cooling it to a temperature below 70° F. under ultra-violet radiation, applying lecithin to the fat sides of the meat to prevent rancidity of the fat, melting wax and adding 0.2% sodium benzoate to it to form a bath into which the meat is dipped, in order to form a protective coating, and thereafter cooling the meat.

The patent to Hopkins discloses the use of a coating of paraffin and lard which is applied to smoked hams for the purpose of preserving them.

The patents to Stone and Bridgeman et al. disclose the use of wax coatings containing a benzoate. The patentees Bridgeman et al. apply such a coating to foods as a preservative, whereas the patentee Stone coats articles, such as straws and paper cups, to prevent the growth of microorganisms on them.

The patent to Kronquest discloses the use of a microcrystalline wax as a coating for a beverage container.

The Australian patent discloses the coating of cured meat which is wrapped in a light porous fabric, with wax containing anti-oxidants or "fungicides and/or bactericides."

The patent to McKee discloses the smoking of hams under conditions which raise the inside temperature of the hams to 156° F. and 164° F.

The patent to James and the McHugh article disclose the treatment of meat with "ultra-violet light" in order to kill bacteria.

The patentee Musher discloses the treatment of smoked fatty meats with lecithin to prevent rancidity, and the patentee suggests immersing the meat in gelatin to form a surface coating.

The patent to Warth et al. discloses food containers lined with various wax compositions.

The rejection of the appealed claims was based on the ground that appellants have merely used a number of steps, each of which is old individually, without producing any new or unexpected result. Counsel for appellants, in their brief, list fifteen steps, various groupings of which are included in the seventeen claims here on appeal.

It is clear that none of the individual steps relied on is novel or patentable per se. The steps are old individually, as shown by the references, except that in one or two instances the exact times, temperatures, or proportions of ingredients claimed by appellants are not disclosed in the references. Such differences as there are in those respects, however, have not been shown to be critical.

Counsel for appellants point out that no single reference anticipates any of the claims and that a comparatively large number of references have been used in making the rejection. However, if the features claimed are all old, and if there was no invention in combining them in a single process or product, it is not material that a number of references are used in rejecting the appealed claims.

The various prior art disclosures, relied on by the Patent Office tribunals, are designed to accomplish the same general purpose as appellants' process; namely, the preservation of foods and the preven-

tion of chemical or bacterial decomposition. It is natural to suppose that the combination of several of the preserving steps, disclosed by the references in a single process, would result in more effective preservation than would be obtained by any one of the prior art steps. However, it is within the province of the skilled worker in the art to employ old preserving steps in any sequence which he deems proper.

In the instant case, no affidavits have been submitted as to comparative tests between appellants' process or product and those of the references. In appellants' application certain examples are given of results obtained by the use of certain combinations of steps. Those examples, which are relied on by counsel for appellants, have been carefully considered, but we are of opinion that they fail to show any critical differences resulting from the particular sequences of steps recited in the appealed claims, and that those claims cover nothing more than an obvious selection of the prior art disclosures.

Certain of the appealed claims are drawn to products, but the products claimed are merely those which necessarily result from the use of appellants' processes. Accordingly, the product claims are unpatentable for the same reasons assigned in rejecting the process claims.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.