**A. M. NAMIROWSKI, Plaintiff,**

v.

**NABISCO, INC., a Foreign Corporation, Defendant.**

**No. 73 C 196.**

United States District Court,
N. D. Illinois, E. D.

Sept. 15, 1976.

Alan D. Katz, Chicago, Ill., for plaintiff.

Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

FLAUM, District Judge.

■ This cause is before the court on defendant's motion for summary judgment.[1] Defendant seeks: (1) the dismissal of plaintiff's complaint; (2) judgment on its counterclaim declaring invalid U.S. Patent No. 3,448,698 which was issued

1. It should be noted that this is defendant's second motion for summary judgment. However, because the defendant has presented this court with relevant information not accompanying its first motion, i. e., the deposition of Ronald Dorken, this court can properly accept and rule on the pending motion. See Brownfield v. Landon, 113 U.S.App.D.C. 248, 307 F.2d

to plaintiff on June 10, 1969. For the reasons set forth *infra,* defendant's motion is granted.

### A. Nature of U.S. Patent No. 3,448,698

The nature and operation of plaintiff's device is quite simple. The patent describes an apparatus which is used in the handling and making of food products, particularly crackers. In the usual production of crackers, the raw dough is placed in separate pieces onto a conveyor belt which is passed beneath a salt-spreading machine used to deposit salt onto the dough. These uncooked pieces of salted dough are then moved by the conveyor into an oven where the cooking of the crackers takes place. Plaintiff's "improvement" consists primarily of two parts: first, a *wire mesh conveyor belt,* containing openings small enough to support the dough but large enough to allow salt to pass through, which accepts the unbaked cracker dough from a separate conveyor system before the dough reaches the salting machine and which carries the dough beneath the salting device thereupon depositing the salted dough pieces onto a third conveyor belt which leads to the oven; and second, a *collecting means, i. e.,* a pan, located beneath the wire mesh conveyor belt and the salting machine which collects the salt not deposited on the unbaked dough after it passes through the wire mesh belt. Furthermore, the patent describes an *air blowing device* which directs forced air against the wire mesh belt on its return trip thereby forcing any salt which adhered to the belt to fall into the collecting means.

The purpose of the invention is also quite simple. By means of a wire mesh conveyor belt, any excess salt which is not placed on the unbaked dough will pass immediately through the wire mesh and never reach the baking ovens. This is important in the cracker industry as when salt enters the ovens periodic cleanings are needed which delay production. Plaintiff claimed in his patent that "virtually all" the salt not deposited onto the separate pieces of dough will fall into the collecting means and avoid entering into and fouling up the oven.

Plaintiff's claims in his patent are only five in number. In claim 1, plaintiff claims as his invention:

"[A] conveyor belt . . . defining a plurality of spaced-apart openings having a maximum dimension whereby adequate support will be provided for the pieces and a minimum dimension which will permit passage of salt through the belt, said belt supporting said pieces as salt is deposited thereon and being completely independent of the conveying means for transporting the pieces to and from said station, whereby virtually all of the material which is not deposited on said pieces falls through the belt and is, therefore, not transported to said oven, and including a collecting means for said material located beneath both the upper and lower flights of said conveyor belt whereby said material passes through both flights before being collected by said collecting means."

Claims 2 through 5 all refer back to claim 1, with claim 2 describing the conveyor belt as a wire mesh belt, claim 3 describing the collecting pans as being removable so that the salt collected therein can be recycled, and claim 5 describing the collecting pan as portable so that it can be removed and replaced without disturbing the continuing operation of the machine. Claim 4 describes the air blowing device.

### B. Defendant's Challenge to Plaintiff's Suit for Infringement

In the present motion for summary judgment, defendant asserts that plaintiff's patent No. 3,448,698 is invalid and therefore an action for infringement will not lie. As to the primary claim 1, as well as claims 2, 3, and 5, defendant relies on 35 U.S.C. §§ 102(a), (b) in arguing that the Namirowski invention is unpatentable. Sections 102(a) and (b) provide:

A person shall be entitled to a patent unless—

389, 393, *cert. denied,* 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962); *Allstate Fin. Corp. v.*

*Zimmerman,* 296 F.2d 797, 799 (5th Cir. 1961); 6 J. Moore, Federal Practice ¶ 56.14[2] (1974).

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . .

Thus, defendant argues that the invention described in claims 1, 2, 3, and 5 was: (1) in *prior publication* before 1965, the earliest date ascribed to the invention's discovery; (2) *anticipated* by a prior patent and publications; (3) *in prior public use* and *on sale* in the United States more than one year before plaintiff's application for his patent; and (4) *not new* or *novel* in the light of prior art.

As to claim 4, defendant argues that it must fail since first, it is dependent for its validity on claim 1 which is invalid, and second, the claim violates 35 U.S.C. § 103 in that

the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

1. The Validity of Claims 1, 2, 3, and 5.

In support of its position that the Namirowski patent is invalid on the grounds of prior publication and public use or sale, lack of novelty, and anticipation, defendant relies on British Patent No. 507,931, issued in 1939 to T. & T. Vicars Ltd. ("Vicars patent"), as well as machines used or sold by Schulze and Burch Biscuit Co., Tiefenthaler Machinery Co., Thomas L. Green & Co., Inc., J. W. Greer, Inc., and Baker Perkins, Inc. The Vicars patent involves a device for "improvements in biscuit making machinery,"

in which . . . salt . . . for dusting or spraying from the dusting or spraying device which does not come upon any dough biscuit is collected after passage through the open space of the reticulate conveyor [comprising an interlinked wire meshwork] and returned to the dusting or spraying device.

The other machines mentioned above, all in use prior to 1965, comprise devices used in the production of crackers in which unbaked cracker dough is sent by conveyor to a wire mesh belt positioned beneath a salting machine and which have a collecting mechanism to collect any excess salt which falls on the wire mesh belt. The collecting means in each machine is removable so that the collected salt can be reused in the production process.

Before proceeding to discuss the merits of defendant's arguments, the court notes that the greatest scrutiny of the record is required prior to a determination of a motion for summary judgment in a patent case. However, the Seventh Circuit has approved of summary judgment in patent litigation when it is clear that there are no genuine issues of *material* fact and a trial on the merits would be useless. *See Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (7th Cir. 1976); *Research Corp. v. NASCO Indus.*, 501 F.2d 358 (7th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974). Moreover, although the plaintiff argues that the presumption of patent validity mandates extreme caution in summary judgment motions challenging a patent's validity, in this case no such presumption exists. Thus, the cases of *Fredman v. Harris-Hub Co.*, 442 F.2d 210 (7th Cir. 1971), *T. P. Laboratories, Inc. v. Huge,* 371 F.2d 231 (7th Cir. 1966), and *Scott Paper Co. v. Fort Howard Paper Co.*, 432 F.2d 1198 (7th Cir. 1970), *cert. denied*, 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1971), establish the principal that, "[T]here is no presumption of patent validity when the pertinent prior art was not before the patent examiner." *Fredman v. Harris-Hub Co.*, 442 F.2d 210, 214 (7th Cir. 1971). In the case at bar, neither the Vicars patent nor the other machines mentioned before was cited to the patent office in Namirowski's application for patent. Therefore, there is no presumption of validity as to U.S. Patent No. 3,448,698.

It is the court's conclusion, after reviewing the Vicars patent, and the affidavits presented describing the other machines used in the United States to bake crackers, that claims 1, 2, 3, and 5 are invalid pursuant to 35 U.S.C. §§ 102(a) and (b) on the grounds of prior publication and use, anticipation and lack of novelty. Claims 1, 2, 3, and 5 refer to two components which delineate the patentable aspect of plaintiff's device; a wire mesh conveyor belt that has holes large enough to allow salt to pass through, and a means for collecting the salt that fails to land on the unbaked cracker dough. All the machines mentioned previously, as well as the Vicars device, contain the identical wire mesh belt and portable collecting mechanism. As stated by the Seventh Circuit in *Popeil Bros, Inc. v. Schick Electric, Inc.*, 494 F.2d 162 (7th Cir. 1974):

> In essence Section 102(a) requires that a method or device, in order to be patentable, be novel. Under the statute such novelty is lacking where a purported invention has been anticipated by a foreign or domestic patent or printed publication or domestic knowledge or use prior to the inventor's date of invention. A previous patent, printed publication or domestic product anticipates a purported invention only where, except for insubstantial differences, *it contains all of the same elements in the same fashion to perform an identical function.*

*Id.* at 164 (emphasis supplied).

Plaintiff does not dispute that the Vicars patent and the other machines cited by defendant contain the same elements described by his patent in claims 1, 2, 3, and 5. Rather, plaintiff argues: (1) that the devices cited by the defendant are unworkable in that periodic cleaning of the baking ovens is still required whereas such cleaning is not required with the Namirowski patent and that the machines cited by defendant were not designed to perform the function of "eliminating" salt from the baking ovens; (2) that none of the devices cited by defendant contain a "noser assembly" as described in plaintiff's patent which sup-

ports the uncooked dough as it passes from conveyor to conveyor; and (3) that the Namirowski patent allows for reuse of the collected excess salt in a "quality control" situation whereas the defendant's devices pulverize the salt making it unfit for use in a "quality control" operation. However, on the basis of undisputed facts, these arguments do not rebut the arguments by defendant that the devices cited by defendant are identical in nature, function and purpose to the invention described in claims 1, 2, 3, and 5 of the Namirowski patent.

As to plaintiff's first argument, it is clear that the devices cited by the defendant were designed to eliminate salt from the baking ovens. Calling the Vicars patent a "recovery" device rather than an "elimination" machine can not dispel the clear language of that patent which states:

> By the present invention any desired treatment by powder . . . may be applied to the *biscuits whilst ensuring that excess material does not pass into the oven.*

Thus, the purposes of the Vicars patent and the Namirowski patent are identical.

Moreover, plaintiff's arguments that the Vicars patent is unworkable and that all the devices cited by defendant do not eliminate periodic cleaning of the baking ovens are without merit. First, plaintiff's sole basis for the belief that the Vicars patent is unworkable is his "opinion," and that of Mr. Dorkin, that the machine will not work. Neither man has seen a Vicars machine in operation and their "opinion" is based solely on a view of the patent's specifications. The affidavit of Mr. Barrett, a director of Simon-Vicars Ltd., conclusively shows that the Vicars device can operate to eliminate salt from entering the baking ovens during the baking of separate pieces of cracker dough. This affidavit is uncontroverted by plaintiff on the basis of any personal knowledge held by plaintiff. Second, although it is true that none of the affidavits presented concerning the operation of the devices cited by the defendant indicate whether or not periodic cleaning of the ovens is still necessary, this fact is irrelevant in the light of

plaintiff's own admission that his machine, as defined in claims 1, 2, 3, and 5, will not eliminate salt from entering the baking ovens. Thus, on page 7 of plaintiff's own affidavit in opposition to defendant's motion, plaintiff admits that even with the wire mesh belt as he designed it, "after a while this excess salt built up on the wire mesh belt [and] would be thrown onto the oven band and into the oven."

In regard to the second and third arguments raised by plaintiff, all that need be noted is that neither the "noser assembly" nor the device used to prevent pulverization of the salt were ever mentioned in any of the patent claims. Thus, since the law is clear that it is the "claim of the patent [which] measures the grant," *Popeil Bros., Inc. v. Schick Electric, Inc.*, 356 F.Supp. 240, 252 (N.D.Ill.1972), *aff'd* 494 F.2d 162 (7th Cir. 1974), such factual distinctions are irrelevant to whether or not the devices cited by the defendant anticipate the invention *claimed* by Namirowski in his patent. In other words, these factual differences do not create a genuine issue of *material* fact.

Therefore, since there are no genuine issues of material fact, claims 1, 2, 3, and 5 are declared invalid in that before 1965 there was in existence devices and prior publications describing devices which contained all the elements enumerated in those claims, which performed the same function in the same way as the machine defined in those claims, and whose purposes were to perform the same function as was performed by the device described in those claims. 35 U.S.C. § 102(a), (b); *Popeil Bros., Inc. v. Schick Electric, Inc.*, 494 F.2d 162 (7th Cir. 1974).

2. Validity of Claim 4.

Claim 4 describes a device containing a wire mesh conveyor belt and collecting means, as defined in claim 1, as well as an air blower which forces air against the wire mesh conveyor belt's return trip in order to dislodge any excess salt which might become stuck in the wire mesh openings. Defendant argues that, pursuant to 35 U.S.C.

§ 103, claim 4 is invalid in that all the elements included within the claim were in existence prior to the date of invention and that the *combination* of these known elements would have been obvious to one skilled in the art. In support of this argument, defendant presents several affidavits which state that *air hoses* were located along the cracker baking line although defendant does admit that air blowers were never attached to and in constant operation with the wire mesh belt. Plaintiff does not deny that all the elements of the device as described in claim 4 existed prior to his discovery, but he argues that his invention could not have been obvious in light of the long felt need for such a device and the fact that Nabisco, a huge multinational corporation with a large research and patent department, could not solve the problem.

However, the recent Supreme Court decisions in *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976) and *Dann v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976) make it clear that the plaintiff's claim 4 is obvious and invalid. In *Sakraida*, the Court pointed out that even if a device is commercially successful and fulfills a long-felt need in an industry, a combination patent is still obvious and invalid where the reordering of known elements fails to produce a synergistic result. 96 S.Ct. at 1537. Thus, before a court even considers whether or not there did exist a long-felt need for the purported invention, the court must determine that the combination of old elements produces a result greater than the sum of the parts. As the Court stated in invalidating the patent in issue in *Sakraida*,

> this patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous combinations. Such combinations are not patentable under standards appropriate for a combination patent.

*Id.*

In the case at bar, the "striking result" which occurred by the elimination of

all excess salt from the baking ovens does not counter the fact that each old element still operates as it did prior to its repositioning in claim 4. In this regard, the facts of *Sakraida* are quite similar to the facts here. The patent in *Sakraida* involved a system using water to clean animal wastes from barn floors. The prior art disclosed that spot delivery of water by high pressure hoses was used to clean barn floors in the past. The patent in issue provided for an abrupt release of water from a tank directly to the barn floor cleaning the floor in minutes. As to Namirowski's claim 4, the prior art undisputedly shows that compressed air was used to clean the wire mesh belts and equipment in cracker manufacturing. All that claim 4 achieved, as did the *Sakraida* device, was a direct, continuous application of a prior known method. As such, claim 4 is obvious as it is simply not *new*.

C. Conclusion

Therefore, for the foregoing reasons it is this court's opinion that summary judgment is appropriate in this case as there exists no genuine issue of material fact. As the Supreme Court has stated in *Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

> Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements.

*Id.* at 152, 71 S.Ct. at 130. It is the court's conclusion that the Namirowski patent does not contain that element of "newness" which is required to overcome the "improbability" of finding "invention" in a combination of old elements. Defendant's motion for summary judgment is hereby granted.

It is so ordered.